**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT O., | ) | No. CV 19-6248-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

Robert O.[1] ("plaintiff") filed this action on July 19, 2019, seeking review of the Commissioner's denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on August 14, 2019, and August 22, 2019. Pursuant to the Order of the Magistrate Judge previously assigned to this matter, the parties filed a Joint Stipulation (alternatively "JS") on February 28, 2020, that

---

[1]    In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

addresses their positions concerning the disputed issue in the case.  On April 29, 2020, the matter was reassigned to the undersigned Magistrate Judge.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1956.  [Administrative Record ("AR") at 222.]  He has past relevant work experience as a network control operator and as a systems analyst.  [Id. at 35, 77-78.]

On October 1, 2016, plaintiff protectively filed an application for a period of disability and DIB alleging that he has been unable to work since September 1, 2013.  [Id. at 29; see also id. at 222-23.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 166-67.]  A video hearing was held on August 16, 2018, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [Id. at 40-85.]  A vocational expert ("VE") also testified.  [Id. at 76-80.]  On August 31, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from September 1, 2013, the alleged onset date, through August 31, 2018, the date of the decision.  [Id. at 29-35.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 207-09.]  When the Appeals Council denied plaintiff's request for review on May 31, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Revels, 874 F.3d at 654 (internal quotation marks and citation omitted).  However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).  In the first step, the Commissioner must determine whether the claimant is currently engaged in

3

substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Lounsburry</u>, 468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that he is unable to perform past relevant work.  <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a <u>prima facie</u> case of disability is established.  <u>Id.</u>  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  <u>Lounsburry</u>, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 721, 828 n.5 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

Plaintiff has a prior claim that was pursued to the level of an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on August 13, 2013.  Pursuant to Acquiescence Ruling 97-4(9) and <u>Chavez v. Bowen</u>, 844 F.2d 691 (9th Cir. 1988), there is a presumption of continuing non-disability arising from that prior decision.  Plaintiff has the burden to rebut the presumption by showing "changed circumstances indicating a greater disability."  [<u>See</u> AR at 29.]

1    The ALJ first determined that plaintiff had rebutted the <u>Chavez</u> presumption of continuing non-

2    disability because his circumstances changed "in that he is now limited to light work, opposed to

3    the medium exertional level found in the prior decision." [<u>Id.</u>] He also found, however, that "new

4    and material evidence" regarding plaintiff's condition "shows that mental limitations are no longer

5    supported by the treatment evidence." [<u>Id.</u>]

6         At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

7    September 1, 2013, the alleged onset date.[2] [<u>Id.</u> at 32.] At step two, the ALJ concluded that

8    plaintiff has the severe impairments of organic brain syndrome with photosensitivity and

9    headaches. [<u>Id.</u>] At step three, the ALJ determined that plaintiff does not have an impairment or

10   a combination of impairments that meets or medically equals any of the impairments in the Listing.

11   [<u>Id.</u> at 33.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3]

12   to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] except as follows:

13        [He can] frequently kneel, crouch, crawl; occasionally climb ramps/stairs, balance,
          stoop; never climb ladders, ropes, scaffolds; avoid concentrated exposure to
14        hazards (machinery, heights, etc.).

15   [<u>Id.</u>] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that

16   plaintiff is able to perform his past relevant work as a network control operator and as a systems

17   analyst. [<u>Id.</u> at 35.] Accordingly, the ALJ determined that plaintiff was not disabled at any time

18

19        [2]   The ALJ concluded that plaintiff met the insured status requirements of the Social
20   Security Act through December 31, 2015. [AR at 31.]

21        [3]   RFC is what a claimant can still do despite existing exertional and nonexertional
     limitations. <u>See</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
22   three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
     the ALJ assesses the claimant's residual functional capacity." <u>Massachi v. Astrue</u>, 486 F.3d 1149,
23   1151 n.2 (9th Cir. 2007) (citation omitted).

24        [4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
25   of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this
     category when it requires a good deal of walking or standing, or when it involves sitting most of the
26   time with some pushing and pulling of arm or leg controls. To be considered capable of performing
     a full or wide range of light work, you must have the ability to do substantially all of these activities.
27   If someone can do light work, we determine that he or she can also do sedentary work, unless there
     are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."
28   20 C.F.R. § 404.1567(b).

1  from the alleged onset date of September 1, 2013, through August 31, 2018, the date of the

2  decision.  [Id.]

3

4  **V.**

5  **THE ALJ'S DECISION**

6  Plaintiff contends that the ALJ erred when he failed to provide specific and legitimate

7  reasons supported by substantial evidence for rejecting the January 21, 2015, opinion of Philip

8  J. Citek, M.D., who treated plaintiff in connection with his worker's compensation claim stemming

9  from a head injury.  [JS at 4.]  As set forth below, the Court agrees with plaintiff and remands for

10  further proceedings.

11

12  **A.   LEGAL STANDARD**

13  "There are three types of medical opinions in social security cases:  those from treating

14  physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec.

15  Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5]  The Ninth

16  Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given

17  'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory

18  diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's]

19  case record.'"  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

20  404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be

21  given to the opinion of a treating source than to the opinion of doctors who do not treat the

22

23  [5]    The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R.

24  § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security
   Administration "will not defer or give any specific evidentiary weight, including controlling weight,

25  to any medical opinion(s) or prior administrative medical finding(s), including those from your
   medical sources."  20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating

26  source," as well as what is customarily known as the treating source or treating physician rule.
   See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However,

27  the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed
   plaintiff's claim pursuant to the treating source rule set out herein.  See also 20 C.F.R. § 404.1527

28  (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

1   claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r of Soc. Sec.

2   Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d

3   1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater

4   weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r

5   of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

6          "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

7   opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d

8   at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and

9   legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528

10  F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it

11  according to factors such as the nature, extent, and length of the physician-patient working

12  relationship, the frequency of examinations, whether the physician's opinion is supported by and

13  consistent with the record, and the specialization of the physician.  Trevizo, 871 F.3d at 676; see

14  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard

15  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

16  stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th

17  Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the

18  [treating or examining] doctors', are correct."  Id.

19         Although the opinion of a non-examining physician "cannot by itself constitute substantial

20  evidence that justifies the rejection of the opinion of either an examining physician or a treating

21  physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians,

22  psychologists, and other medical specialists who are also experts in Social Security disability

23  evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554

24  F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in

25  determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the

26  claimant's functional limitations).  Reports of non-examining medical experts "may serve as

27  substantial evidence when they are supported by other evidence in the record and are consistent

28  with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

7

1    **B.    DR. CITEK'S OPINIONS**

2    On January 21, 2015, Dr. Citek, who treated plaintiff since approximately 2011 in

3    connection with his worker's compensation claim stemming from a head injury at work on August

4    28, 2006,[6] prepared a follow-up "Primary Treating Physician's Progress Report" ("Report"). [AR

5    at 362-68.] At this visit, plaintiff reported that he was experiencing pain in his neck, upper back,

6    and shoulders, as well as headaches. [Id. at 363.] He rated his current pain as 5 (on a 10-point

7    scale) on a good day, and 8 on a bad day. [Id.] He reported that he frequently experienced the

8    pain, which was aggravated by cold, activity, sitting, and standing, and alleviated by heat, rest,

9    lying down, quiet, and medication. [Id.] Plaintiff reported that previous treatments he had received

10   included psychiatric, biofeedback, and speech and cognitive therapies. [Id.] Dr. Citek conducted

11   a physical examination and noted on cervical examination that plaintiff was hypolordotic (his

12   cervical spine had lost its normal curve), he exhibited a "[h]ead forward posture" with his shoulders

13   mildly rolled forward, and he exhibited "[e]nd range of motion stiffness/tenderness," and tight

14   trapezii. [Id. at 365.] Dr. Citek's lumbar/sacral examination also reflected end range of motion

15   stiffness/tenderness. [Id.] He diagnosed plaintiff with chronic pain syndrome, myofascial pain

16   syndrome, cervicalgia (neck pain), mood disorder associated with traumatic brain injury, and

17   convergence insufficiency (a condition in which one's eyes are unable to work together when

18   looking at nearby objects; one eye turns outward instead of inward, with the other eye creating

19   double or blurred vision). [Id. at 367; see also JS at 5 & n.4.]

20   On September 5, 2015, Dr. Citek completed a "Physical Residual Functional Capacity

21   Questionnaire" ("Questionnaire"). [AR at 369-73.] In that Questionnaire, he reported that he had

22   treated plaintiff monthly since May 2011, and included the same diagnoses as in his January

23   Report. [Id. at 369.] Dr. Citek noted symptoms of daily headaches, fatigue, cognitive dysfunction,

24   memory difficulty, altered mood, altered visual activity that triggers pain, poor concentration,

25   decreased stress tolerance, impaired balance, and pain that varies from mild to moderate and

26   _____

27   [6]    The injury occurred when plaintiff, who was working "in a very confined telephone room . . . struck his head on a metal box when rising," and suffered a concussion and cervical sprain.

28   [AR at 362-63.]

8

1   moderate to severe.  [Id.]  He identified the clinical findings and objective signs supporting his

2   opinion to be neuropsychological testing performed by Dr. Russell from 2009-2011 [id. at 604-36]

3   and neuro-visual testing performed by Dr. Garbus, O.D. in July 2015 [id. at 397-418].  Dr. Citek

4   concluded that plaintiff's symptoms were severe enough to frequently interfere with his attention

5   and concentration; he was moderately impaired in his ability to deal with stress; he could sit for

6   at least six hours in an eight-hour workday; he could stand/walk about two hours in an eight-hour

7   workday; he would need to be able to shift positions at will and take unscheduled breaks during

8   an eight-hour workday; he could lift 20 pounds occasionally and ten pounds frequently; and had

9   limitations with respect to reaching, handling, and fingering.  [Id. at 372.]  He also found that

10  plaintiff would miss more than three days of work a month.  [Id. at 373.]

11          The ALJ stated the following relating to Dr. Citek's opinions[7]:

12          The record reflects daily activities of [plaintiff] that are not limited to the extent one
            would expect, given the complaints of disabling symptoms and limitations.  [Plaintiff]
13          testified that [he] is able to pay bills, grocery shop, cook, clean the house, take out
            the trash, and do the yard work, although [he] said that his wife is able to do some
14          of these things too.  [He] walks and bicycles regularly.  [He] is able to play the piano.

15          . . . .

16          The undersigned gives little weight to the opinions of Dr. Citek . . . as they are brief
            and conclusory and fail to provide sufficient justification for such restrictive findings.
17          Furthermore, the restrictions are inconsistent with [plaintiff's] activities of daily living,
            as discussed above.

18

19  [Id. at 34 (citations omitted).]  The ALJ also generally summarized other medical records and

20  noted that plaintiff started occupational "therapy with Solutions at Santa Barbara on August 25,

21  2014 . . . [and] was reported to have good progress after a month of treatment and no further

22  treatment was indicated"; that in January 2015 plaintiff reported that his tolerance for visual work

23  had increased, he had a normal gait, and had been "treated with prescription glasses that allowed

24

25          [7]   With respect to plaintiff's physical impairments, the ALJ cited to Dr. Citek's opinions at
26  "Exhibit B8-14," which is an incomplete citation of a seven-page document.  [AR at 34.]  The Court
    construes this reference, therefore, as a citation only to Dr. Citek's January 2015 Report, which
27  is seven pages.  [AR at 362-68.]  The September 2015 Questionnaire is only a five-page
    document [id. at 369-73], and the ALJ does not appear to have specifically cited to it with respect
28  to plaintiff's physical impairments.

1   [him] to be more functional," and his gait to improve; and there was no significant treatment for

2   complaints related to plaintiff's occupational injury after January 2015, as office visit notes instead

3   reflected treatment for dermatologic and urological concerns.  [Id. (citations omitted).]  The ALJ

4   further found that through the date last insured, there were no primary care provider notes

5   showing ongoing treatment for headaches, fatigue, or the other symptoms reported by plaintiff at

6   the hearing, and that an evaluation on May 4, 2017 (after the date last insured), reflected that

7   plaintiff had complete independence in "nearly all domains," and that in August 2017 at a

8   comprehensive physical examination he reported that he was "doing well overall."  [Id. (citing id.

9   at 1003, 1009).]

10

11   **C.    THE PARTIES' CONTENTIONS**

12          Plaintiff contends that the ALJ's assertion that Dr. Citek's opinion is "brief and conclusory

13   without substantial analysis is insufficient as a matter of law."  [JS at 8 (citations omitted).]  He also

14   asserts that Dr. Citek's opinion is *not* brief and conclusory as it includes Dr. Citek's diagnoses,

15   supporting symptoms and frequencies, and is based on comprehensive neurovisual and

16   neuropsychological testing in the record.  [Id. at 9.]  With respect to the ALJ's conclusion that the

17   opinion is inconsistent with plaintiff's daily activities, plaintiff notes that some of those activities

18   were taken from Dr. Citek's Report itself.  [Id.]  He acknowledges that a treating physician's

19   opinion may be rejected if it is inconsistent with the claimant's daily activities, but not if "a holistic

20   view of the record does not reveal an inconsistency between the treating providers' opinions and

21   [the claimant]'s daily activities."  [Id. at 10 (citing Doto v. Berryhill, 2018 WL 4680212, at *20 (N.D.

22   Cal. Sept. 28, 2018)) (quoting Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal

23   quotation marks omitted) (brackets in original)).]  He argues that some of the daily activities relied

24   on by the ALJ -- such as plaintiff's computer-based cognitive rehab program, playing piano, Tai

25   Chi, walking and balancing programs -- when read in context, describe therapeutic activities that

26   he engages in as suggested by his treating providers.  [Id.]  He argues that this, therefore, is not

27   a proper basis to reject Dr. Citek's opinion.  [Id. (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th

28   Cir. 2001); Perry v. Comm'r of Soc. Sec., 2017 WL 2579294, at *5 (D. Or. June 14, 2017)).]

1    Plaintiff also contends that the ALJ "cherry-pick[ed] evidence" from the Report to support his

2    findings, noting that although the ALJ mentioned plaintiff's therapeutic exercises, he completely

3    failed to mention that the Report also noted that he "experiences episodes of significant fatigue,

4    approximately 3x a day, and he must rest for 30 to 45 minutes before resuming activities."  [Id.

5    (citing AR at 362).]  He argues that his testimony about his other daily activities -- such as bill

6    paying, grocery shopping, cleaning the house, taking out the trash, and doing yard work -- reflects

7    that he needs to rest after doing these chores.  [Id.]  He also asserts that the ALJ did not

8    demonstrate how any of plaintiff's daily activities is inconsistent with Dr. Citek's assessment, and

9    did not specifically identify the activities that undermine Dr. Citek's opinion.  Plaintiff argues that

10   none of his daily activities is inconsistent with Dr. Citek's assessed limitations, i.e., none requires

11   him to lift more than 20 pounds, stand for more than an hour at a time, or sit for more than two

12   hours.  [Id. (citing AR at 369-73).]  Plaintiff concludes that the ALJ failed to provide any specific

13   and legitimate reason supported by substantial evidence to reject Dr. Citek's opinion.  [Id. at 12.]

14        Defendant responds that the ALJ properly evaluated Dr. Citek's Report.[8]  [Id. at 13.]  He

15   agrees with the ALJ that Dr. Citek's opinion was "brief and conclusory, failed to provide sufficient

16   justification for his restrictive limitations, and assessed limitations which were inconsistent with

17   Plaintiff's activities," and argues that the ALJ properly found that the opinions of the State agency

18   physicians were entitled to more weight as they were consistent with the record.  [Id. at 14

19   (citations omitted).]  He observes that Dr. Citek's only recommendation was for plaintiff to continue

20   with his medication and home exercise program, including core strengthening, aerobic

21   conditioning, a flexibility program, and heat and ice therapy.  [Id. (citing AR at 368).]  Defendant

22   argues that Dr. Citek did not list any objective findings to support the "significant limitations" he

23

24        [8]    Defendant argues that the ALJ properly rejected any mental impairments indicated by Dr.
     Citek as "inconsistent with plaintiff's lack of any specialized mental health treatment." [JS at 16-17
25   (citations omitted).]  The Court notes that the ALJ also gave little weight to Dr. Citek's opinions
     regarding plaintiff's mental health as "brief and conclusory." [AR at 32 (citing id. at 362-96).]  As
26   plaintiff did not take issue with the ALJ's rejection of his mental impairments, the Court declines
     to fully consider the issue herein.  However, the Court's discussion of the ALJ's cursory rejection
27   of Dr. Citek's opinions regarding plaintiff's physical health as "brief and conclusory," applies as well
28   to his cursory rejection of Dr. Citek's opinions regarding plaintiff's mental health.

assessed, and "instead refers to neuropsychological testing" from Peter Russell, Ph.D., and neurovisual testing from Dr. Garbus, without explaining the objective findings from those reports that support his opinion.  [Id. at 17 (citing AR at 369).]  Defendant summarizes Dr. Garbus' July 2015 and June 2016 records, and notes that although Dr. Garbus changed plaintiff's prescription to help increase plaintiff's functionality for ambulation and distance activities, he also recommended that plaintiff continue with Tai Chi for balance and stress relief, and music therapy, and follow up in a year.  [Id. (citing AR at 400-01, 415).]  Defendant suggests that it "is unclear how these findings would support Dr. Citek's opinion that Plaintiff was unable to work."  [Id.]  Defendant similarly dismisses Dr. Russell's 2009-2011 reports as failing to support Dr. Citek's opinion, as those records were generated "two or more years *before* Plaintiff even alleged disability."  [Id. at 18 (emphasis in original) (citing AR at 369, 604-36).]  He also notes that Dr. Russell found only "slight" limitations in most areas of mental functioning.  [Id. (citing AR at 610-11).]  Defendant notes that Dr. Citek chose to refer to Dr. Russell's outdated reports rather than to Dr. Citek's own progress notes, "despite having examined Plaintiff more recently in 2015, and indicating on the questionnaire that he had been treating Plaintiff monthly since May 2011."  [Id. (citing AR at 362-69).]  Defendant suggests that this may be because Dr. Citek's progress notes "do not support the limitations he assessed."  [Id.]  He observes that in Dr. Citek's January 2015 Report (the last treatment record prior to completing the Questionnaire), he noted minimal physical findings.  [Id. at 18 (citing AR at 364-67).]  Defendant also argues that (1) the Report and the Questionnaire "contain many inconsistencies which weighed against [Dr. Citek's] opinion" and sets forth several examples of the purported inconsistencies [id. at 18-19 (citations omitted)]; (2) Dr. Citek listed a number of plaintiff's subjective symptoms on the questionnaire and the ALJ "found Plaintiff's subjective symptom complaints inconsistent with the record" [id. at 19 (citations omitted)]; and (3) the record "revealed that treatment was helpful," and that there were no records reflecting any significant treatment for plaintiff's complaints, related to his alleged impairments, or ongoing treatment for his symptoms.  [Id. at 20-21.]  Defendant submits, therefore, that the ALJ properly gave little weight to Dr. Citek's "contradictory opinion and more weight to the consistent opinions of the State agency physicians."  [Id. at 22 (citing AR at 34, 132-33, 147-488).]

Plaintiff responds that the entire rationale for the ALJ's rejection of Dr. Citek's opinion was contained in his statement that Dr. Citek's opinion was brief and conclusory and without sufficient justification, and that his restrictions were inconsistent with plaintiff's daily activities.  [Id. at 23.] He notes that most of defendant's arguments were not reasons given by the ALJ for rejecting Dr. Citek's opinions, including defendant's argument that the ALJ rejected plaintiff's subjective symptom testimony, and, therefore, any symptoms reflected in Dr. Citek's treatment records "cannot be considered when evaluating the soundness of the ALJ's rejection of Dr. Citek's opinion." [Id. at 24.] He further submits that an ALJ cannot reject a treating physician's opinion based on the ALJ's questioning of the claimant's credibility "where the doctor does not discredit those complaints and supports the ultimate opinion with [his] own observations." [Id. (citing Ryan, 528 F.3d at 1199-1200).]

**D.    ANALYSIS**

The ALJ gave only two reasons for dismissing Dr. Citek's 2015 Report with respect to plaintiff's physical impairments:  (1) it was "brief and conclusory" and unjustified; and (2) his opinions were inconsistent with plaintiff's daily activities.  Although defendant argues, among other things, that it is unclear how the reports of Dr. Russell and Dr. Garbus would support Dr. Citek's opinion that plaintiff was unable to work, a reasonable reading of Dr. Citek's Report and Questionnaire together reflects that he cited to those reports as support for plaintiff's symptoms, including daily headaches triggered by visual activity that increases the frequency and pain of the headaches; as support for his finding that plaintiff's post-traumatic brain injury condition causes fatigue, cognitive dysfunction including memory difficulty and difficulty retaining information, altered physical movement and visual acuity, poor concentration, impaired balance, and decreased stress tolerance; and as informative of plaintiff's treatment recommendations from these specialists, including at-home therapies.

Defendant suggests that Dr. Russell's reports are not relevant because they were generated before plaintiff "even alleged disability," and also argues that Dr. Russell found only "slight" limitations in most areas of functioning; that Dr. Citek relied on other physician's reports

because his own notes do not support his findings[9]; that Dr. Citek's January 2015 Report noted minimal physical findings; that there were inconsistencies between Dr. Citek's Report and the Questionnaire; that Dr. Citek's recitation of plaintiff's symptoms were based on plaintiff's subjective symptom complaints, which the ALJ found to be inconsistent with the record; that the record revealed treatment was helpful; and that there were no records reflecting any significant treatment for plaintiff's alleged complaints.

These, however, were not reasons given by the ALJ for discounting Dr. Citek's 2015 Report and "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting Dr. Citek's opinions that were not given by the ALJ in the Decision.  See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

### 1. Brief and Conclusory and Unjustified

With respect to the ALJ's finding that Dr. Citek's Report was brief and conclusory and unjustified, the ALJ provided no specific reasoning for this opinion.  A review of the Report reflects a detailed history of plaintiff's traumatic brain syndrome, treatment by numerous specialists, and symptoms, including plaintiff's report that he "has improved his tolerance for visual work at the

---

[9]    A review of Dr. Citek's 2010 and 2011 progress reports, however, reflects that in 2011 Dr. Citek was treating plaintiff for headaches that increased with prolonged visual attention and referred plaintiff to Dr. Garbus because of these issues [AR at 399-401], and noted plaintiff's ongoing problems with work pace and multi-tasking [id. at 400]; in March 2010 Dr. Citek requested authorization for cognitive rehabilitation therapy "to address deficits noted" by two doctors in 2008, by himself and Dr. Russell in 2009, and by two other physicians in 2010, resulting from plaintiff's traumatic brain injury as confirmed by a "Neurologist, a specialist in neurological surgery, a Physiatrist (myself), a Neuropsychologist, a Psychologist and a Speech Therapist" [AR at 385], and regularly noted plaintiff's headaches and impaired ability to concentrate [see, e.g., id. at 393; see also id. at 26, 27-28 (prior decision summarizing Dr. Citek's 2009-2013 findings)].

computer or reading by about 15 minutes, for a total of an hour to an hour and a half before he will have onset of severe left-sided headaches from these activities," and his complaint of approximately three episodes of significant fatigue daily.  [AR at 362.]   As previously noted, Dr. Citek also conducted a complete physical examination that reflected some cervical and lumbar issues.  Even if the Court assumes that the ALJ was considering the Report and the Questionnaire together (i.e., that his citation to a seven-page document was meant to reflect both documents), the ALJ did not provide any indication as to the information in the Report or Questionnaire he found to be "brief and conclusory" and "unjustified," or as to which opinions in those documents he was giving "little weight."  Indeed, it is the ALJ's statement regarding his reasons for rejecting Dr. Citek's opinions that is itself altogether too "brief and conclusory" to constitute a specific and legitimate reason for giving Dr. Citek's Report and/or Questionnaire "little weight."

Remand is warranted on this issue.

### 2.    Inconsistent With Daily Activities

Similarly, the ALJ's suggestion that Dr. Citek's opinions were somehow inconsistent with plaintiff's daily activities fares no better.  An ALJ may reject a medical opinion because the claimant's activities of daily life contradict it, but only if substantial evidence supports that conclusion.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistency between doctor's opinion and claimant's "maintaining a household and raising two young children, with no significant assistance from her ex husband" supported discounting the doctor's opinion).  The record must provide details about the nature, extent, and frequency of the activities for them to "constitute 'substantial evidence' inconsistent with [an examining physician's] informed opinion."  Trevizo, 871 F.3d at 666.  Additionally, while an inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason to discount a treating physician's opinion, this is not true when a "holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities."  Ghanim, 763 F.3d at 1162.

15

Here, the ALJ describes plaintiff's daily activities as consisting of therapeutic activities such as Tai Chi, music therapy, walking and bicycling, as well as bill paying, grocery shopping, cleaning the house, taking out the trash, and doing yard work -- the latter sometimes with the help of his wife. [AR at 34; see also id. at 55-56, 73-76.] The record also reflects that plaintiff testified he needs to rest after doing his chores. [Id. at 75-76.] Plaintiff further testified that he stopped seeing Dr. Citek in February 2017 because "it was taking a lot of effort to get there, and all he was just telling me keep doing my at-home therapy, . . . just keep doing what you're doing at home," and stated that he has been doing therapeutic activities (such as Tai Chi, music therapy, bicycling, balance exercises, and vision training) on his own at home. [Id. at 57-58.] Indeed, Dr. Citek's 2015 Report reflected that even at that time plaintiff was doing his "scanning, depth perception, and focusing exercises," Tai Chi exercises, walking, bicycling, autogenics, computer-based cognitive rehabilitation program, and piano playing at home. [Id. at 362.] Dr. Citek recommended in his Report that plaintiff continue his "exercise core strengthening, aerobic conditioning and flexibility program," postural and functional ergonomics program, and heat and ice therapy at home. [Id. at 368.] Thus, to the extent that the ALJ suggested that through the date last insured (December 2015) there were "no primary care provider notes showing ongoing treatment for headaches, fatigue, or the other symptoms [plaintiff] reported at the hearing" [see id. at 34], this may be due primarily to plaintiff doing the prescribed therapeutic treatments at home on his own.

The ALJ also did not provide any explanation how these daily activities are inconsistent with any of Dr. Citek's opinions whether regarding concentration, memory, balance, or lumbar/cervical issues as reflected in the Report, or regarding lifting, standing, walking, alternating positions, taking unscheduled breaks, impaired concentration, or manipulative limitations as reflected in the Questionnaire. Although the ALJ stated that in January 2015 plaintiff reported that "his tolerance for visual work had increased" [Id. (citing id. at 362)], the ALJ only reported half of the story. What plaintiff actually reported -- in full -- was that "he has improved his tolerance for visual work at the computer or reading, by about 15 minutes, for a total of an hour to an hour and a half before he will have onset of severe left-sided headaches from these activities." [Id. at 362.] This does not reflect an ability to tolerate an eight-hour workday, especially for an individual whose past relevant

16

work involved extensive computer use.  See, e.g., DOT Nos. 031.262-014 (network control operator, light occupation), 030-167.014 (systems analyst, sedentary occupation).  An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings.  See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Based on the foregoing, this was not a specific and legitimate reason supported by substantial evidence for giving Dr. Citek's opinions "little weight."

Remand is warranted on this issue.


**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits.  Trevizo, 871 F.3d at 682 (citation omitted).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Citek, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Citek.  The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. In addition, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and

1   convincing reasons, supported by substantial evidence in the case record, for discounting or

2   rejecting any testimony.  Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine

3   at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his

4   past relevant work as a network control operator or as a systems analyst.  If plaintiff is not so

5   capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall

6   proceed to step five and determine, with the assistance of a VE if necessary, whether there are

7   jobs existing in significant numbers in the regional and national economy that plaintiff can still

8   perform.

9

10                                          **VII.**

11                                    **CONCLUSION**

12            **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

13   decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

14   proceedings consistent with this Memorandum Opinion.

15            **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

16   Judgment herein on all parties or their counsel.

17            **This Memorandum Opinion and Order is not intended for publication, nor is it**

18   **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

19

20   DATED:  May 13, 2020          _____
                                              PAUL L. ABRAMS
21                                         UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28